UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PETERSON WAMPOLD ROSATO
FELDMAN LUNA,

                Plaintiff,

    v.

UNITED STATES COAST GUARD,

                Defendant.

CASE NO. C20-1451-RSM-SKV

REPORT AND RECOMMENDATION

## INTRODUCTION

This Freedom of Information Act ("FOIA") matter comes before the Court on cross-motions seeking partial summary judgment by Plaintiff Peterson Wampold Rosato Feldman Luna (PWRFL), Dkt. 20, and Defendant United States Coast Guard (USCG), Dkt. 26. Having reviewed the motions, oppositions, and all associated papers,[1] the Court recommends Plaintiff's motion be DENIED and Defendant's motion be GRANTED.

---

[1] Plaintiff's request for oral argument, Dkt. 20 at 1, is DENIED. The parties have thoroughly briefed the issues and oral argument would not be of assistance to the Court. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) (district court may decide summary judgment without oral argument where the parties were provided the opportunity to "submit their papers to the court"); *see also* LCR 7(b)(4) ("Unless otherwise ordered by the court, all motions will be decided by the court without oral argument.")

## BACKGROUND

A.    Underlying Incident and FOIA Request

Plaintiff PWRFL represents Michael Powers in a separate lawsuit pending against Defendant USCG.  *See Powers v. United States*, C21-0517-TSZ.  In that lawsuit, Mr. Powers alleges Defendant's negligence in the decision to call off a May 2, 2019 search and rescue (SAR) operation after a vessel carrying Mr. Powers and his cousin, Richard Seay, capsized near the Deception Pass Bridge. *Id*. (Dkt. 1).  Mr. Seay died shortly after entering the water, while Mr. Powers remained at sea for hours before his rescue by a Good Samaritan. *See id*.

On June 20, 2019, before filing a lawsuit, Plaintiff submitted a FOIA request to Defendant asking for all communications, documents, records, and other materials relating to the SAR, any investigation, and any subsequent action, discipline, report, or assessment.  *See* Dkt. 1-1 at 2-3.  Defendant construed the request as seeking, among other things, a Case Study Report concerning the SAR and proceeded to process the report.  Dkt. 27, ¶ 3.  Following a series of communications as to an impending production of documents responsive to the FOIA request, Plaintiff, on September 30, 2020, filed the current lawsuit. *See* Dkt. 1.

On January 21, 2021, Defendant provided Plaintiff with eighty-six pages of documents comprising a USCG Case Study Report.  Dkt. 21, Ex. 2.  The report contained redactions, only some of which cited FOIA exemptions. *Id*.  Plaintiff asked for clarification and Defendant indicated it relied on Exemptions (b)(5), (b)(6), and (b)(7)(C), without identifying the exemptions corresponding with the redactions. *Id*., Exs. 3-4.  Defendant later sent a copy of the report with labeled redactions. *Id*., Ex. 5.  Defendant subsequently, on May 14, 2021, sent an updated copy with some redactions removed, an accompanying letter, and a "*Vaughn* Index"

1    providing additional information about the "deliberate process privilege" withholdings pursuant

2    to FOIA "Exemption 5."  *Id*., Exs. 1, 6; Dkt. 27, Ex. 1-2.

3    B.    USCG Case Study Report

4    Defendant attests:  "A Coast Guard Case Study Report is a document created by the

5    Coast Guard to raise, discuss, consider, and/or potentially implement policy changes to the SAR

6    process and/or policy by making recommendations that may be considered up the Coast Guard

7    chain of command, who then prepares a Final Action Report which may accept, reject, or

8    implement a recommendation."   Dkt. 27 (Decl. of Brian Judge, Chief, Office of Claims and

9    Litigation, USCG), ¶ 9.  As set forth in the USCG Addendum to the United States National

10   Search and Rescue Supplement to the International Aeronautical and Maritime Search and

11   Rescue Manual ("CGAAD" or "COMDTINST M16130.2F"), Defendant conducts a case study

12   and creates a Case Study Report when

13           (a)  Survivors are located inside the search area after a search has been
              suspended;
14
15           (b)  Survivors are located outside the search area by someone not involved
              in the search while the search is in progress; and

16           (c)  Directed by the Office of Search and Rescue (Commandant (CG –
              SAR)) or the SAR Coordinator (Area or District Commander).
17

18   COMDTINST M16130.2F § 3.9.4.1.[2]  Further:

19           SAR Case Studies **are not** Administrative Investigations. They are intended to be
             used primarily as a means of contributing to the continuous improvement of the
20           SAR system. SAR Case Studies are also valuable teaching tools that benefit
             current and future SAR and communications watchstanders. In order to maximize
21           utility and value, Case Studies should consider actions that could or should have
             been taken, as well as those actions which, although not typically expected, may
22           offer a benefit to the SAR system.

23   _____

     [2] The COMDINST M16130.2F may be found at https://www.dco.uscg.mil/Portals/9/CG-
24   5R/manuals/COMDTINST%20M16130.2F.pdf.

1  *Id*. § 3.9.4.2 (emphasis in original).

2       The CGAAD provides that, once complete, a Case Study Report is forwarded to the

3  command entity with "authority to implement any recommended changes in policy indicated in

4  the study." *Id*. § 3.9.4.8 (a) (emphasis removed).  Subsequently: "**A Final Action Report shall**

5  **be prepared by that command following a review of the Case Study**.  The Final Action

6  Report will be a stand-alone document, extracting any needed data from the study to justify the

7  acceptance, implementation, or rejection of the recommendations." *Id*. § 3.9.4.8 (b) (emphasis in

8  original).  As stated in the CGAAD:

9       [A] Case Study is considered a deliberative, pre-decisional document because it
        has summarized facts and individual opinions which may not have been approved
10      by the chain of command. Therefore, the majority of the Case Study is normally
        exempt from disclosure under FOIA. In contrast, the Final Action Report is
11      generally not exempt from disclosure under FOIA. **For that reason, the Final**
        **Action Report shall be drafted and treated as a standalone document, and**
12      **shall not merely approve, refer to, or incorporate the underlying Case Study.**

13  *Id*. § 3.9.4.8 (d) (emphasis in original).  Also:

14      In order to ensure a full and frank discussion of issues within a Case Study, it is
        imperative that the Coast Guard be able to protect from public release the
15      deliberative portions of the study. Therefore, the majority of the Case Study is
        normally exempt from disclosure under FOIA. In contrast, the Final Action
16      Report is generally not exempt from disclosure under FOIA.

17  *Id*. § 3.9.4.10.

18       Plaintiff denies the applicability of the deliberative process privilege to the Case Study

19  Report.  Plaintiff asserts Defendant created the report to review and evaluate the SAR for the

20  capsized vessel and persons in the water.  The report reflects: "The Case Study Team examined

21  the details of both cases to determine actions taken and derive lessons learned for the purpose of

22  continuous process improvement and make a determination if they correlated."  Dkt. 21, Ex. 1 at

23  1.  The report also included a determination as to what happened during the events in question

24

1    Defendant asserts the proper application of the deliberative process privilege.  Defendant

2    explains the redactions as consisting of opinions and recommendations related to two types of

3    decisions:  (1) information conveying discussions or debate about possible courses of action

4    which antedate decisions made in the SAR, which includes "discussions between subordinates

5    and the local Coast Guard decision-makers about potential operational, tactical, or logistical

6    options in order to better inform the commanding officer's immediate decision[;]" and (2)

7    "material created explicitly as a recommendation and opinion to the Chief of CG-SAR for

8    potential changes of Coast Guard policy or doctrine."  Dkt. 27, ¶ 8.

9    <u>DISCUSSION</u>

10    Both parties move for partial summary judgment in the current case.  They seek a ruling

11    on whether Defendant appropriately redacted and withheld information from the USCG Case

12    Study Report pursuant to the Exemption 5 deliberative process privilege.  They also agree the

13    Court's decision on this issue may inform the production of other records relevant to the related

14    civil action.  *But see infra* n. 3.

15    A.    <u>FOIA and Summary Judgment Standards</u>

16    FOIA requires federal agencies to make their records available to the public, subject to

17    nine enumerated exemptions.  *See* 5 U.S.C. § 552(a)-(b).  It serves to "'ensure an informed

18    citizenry, vital to the functioning of a democratic society, needed to check against corruption and

19    to hold the governors accountable to the governed.'"  *John Doe Agency v. John Doe Corp.*, 493

20    U.S. 146, 152 (1989) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)).

21    Federal agencies must construe FOIA requests liberally, *Yagman v. Pompeo*, 868 F.3d 1075,

22    1079-80 (9th Cir. 2017), and the exemptions must be "'narrowly construed.'"  *John Doe Agency*,

23

24

1   493 U.S. at 152 (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)).  "Any

2   reasonably segregable portion of a record shall be provided[.]"  5 U.S.C. § 552(b).

3       "Summary judgment is the procedural vehicle by which nearly all FOIA cases are

4   resolved." *L.A. Times Commc'ns, LLC v. Dep't of the Army*, 442 F. Supp. 2d 880, 893 (C.D.

5   Cal. 2006).  The usual summary judgment standards apply, *Cameranesi v. United States DOD*,

6   856 F.3d 626, 636 (9th Cir. 2017), meaning the court is authorized to grant summary judgment if

7   no genuine issue of material fact exists and the moving party is entitled to judgment as a matter

8   of law, Fed. R. Civ. P. 56(a).  The court conducts a *de novo* review of the agency's response to

9   the FOIA request.  5 U.S.C. § 552(a)(4)(B); *U.S. Dep't of Just. v. Reps. Comm. for Freedom of*

10  *Press*, 489 U.S. 749, 755 (1989).  If a genuine issue of material fact exists, the court should

11  proceed to a bench trial or adversary hearing.  *Animal Legal Def. Fund v. U.S. Food & Drug*

12  *Admin.*, 836 F.3d 987, 990 (9th Cir. 2016).

13      The agency bears the burden of establishing a FOIA exemption applies.  *Lahr v. Nat'l*

14  *Transp. Safety Bd*., 569 F.3d 964, 973 (9th Cir. 2009).  Affidavits or declarations submitted in

15  support must describe withheld information and the reason for nondisclosure in a factual and

16  non-conclusory manner.  *Ferranti v. Bureau of Alcohol, Tobacco & Firearms*, 177 F. Supp. 2d

17  41, 45 (D.D.C. 2001).  Many agencies choose to meet their burden of production through a

18  *Vaughn* Index.  *Sea Shepherd Legal v. Nat'l Oceanic & Atmospheric Admin*., 516 F. Supp. 3d

19  1217, 1228 (W.D. Wash. 2021).  In so doing, an agency should "'disclose as much information

20  as possible' without thwarting the purpose of the stated exemption[.]"  *Id*. (quoted source

21  omitted).  Justification for invoking an exception suffices "if it appears 'logical' or 'plausible.'"

22  *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007) (quoted sources omitted).  The Court should

23  "'respect the expertise of an agency' and not 'overstep the proper limits of the judicial role in

24

1    FOIA review.'" *Hunton & Williams LLP v. U.S. Env't Prot. Agency*, 248 F. Supp. 3d 220, 235

2    (D.D.C. 2017) (quoting *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1388 (D.C.

3    Cir. 1979)).

4    B.    Exemption 5 Deliberative Process Privilege

5         Under Exemption 5, an agency need not release "inter-agency or intra-agency

6    memorandums or letters that would not be available by law to a party other than an agency in

7    litigation with the agency[.]"  5 U.S.C. § 552(b)(5) (excluding "records created 25 years or more

8    before the date on which the records were requested").  This exemption incorporates privileges

9    available to the government in civil litigation, including the deliberative process, attorney-client,

10   and attorney work-product privileges.  *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*

11   *("Sierra Club")*, __ U.S. __ 141 S. Ct. 777, 785, 209 L. Ed. 2d 78 (2021) (citation omitted).  It

12   serves the purpose of maintaining the confidentiality of and shielding from disclosure

13   "'documents reflecting advisory opinions, recommendations and deliberations comprising part of

14   a process by which governmental decisions and policies are formulated[.]'"  *Id.* (quoting *NLRB*

15   *v. Sears, Roebuck & Co. ("Sears")*, 421 U.S. 132, 149 (1975)).

16        By shielding the "give-and-take" in the formulation of policy, the privilege "encourages

17   frank and open discussion of ideas, and, hence, improves the decision[-]making process." *Nat'l*

18   *Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988).  "To encourage candor,

19   which improves agency decisionmaking, the privilege blunts the chilling effect that accompanies

20   the prospect of disclosure." *Sierra Club*, 141 S. Ct. at 785.  The privilege allows agencies to

21   "'freely . . . explore possibilities, engage in internal debates, or play devil's advocate without fear

22   of public scrutiny.'"  *Lahr*, 569 F.3d at 979 (quoted source omitted).

23

24

1    The deliberative process privilege "distinguishes between predecisional, deliberative

2    documents which are exempt from disclosure, and documents reflecting a final agency decision

3    and the reasons supporting it, which are not." *Sierra Club*, 141 S. Ct. at 785. "Documents are

4    'predecisional' if they were generated before the agency's final decision on the matter, and they

5    are 'deliberative' if they were prepared to help the agency formulate its position." *Id.* at 786

6    (citations omitted). To qualify under Exemption 5, "a document must be *both* (1) 'predecisional'

7    or 'antecedent to the adoption of agency policy' and (2) 'deliberative,' meaning 'it must actually

8    be related to the process by which policies are formulated.'" *Nat'l Wildlife Fed'n*, 861 F.2d at

9    1117 (quoted source omitted). *See also supra* at section D (addressing foreseeable harm

10   requirement). The two prongs overlap "because a document cannot be deliberative unless it is

11   predecisional." *Id.*

12    In this case, the parties dispute whether the Case Study Report meets either Exemption 5

13   requirement.[3]

14   C.    Applicability of Exemption 5 to the Case Study Report

15       1.   Predecisional requirement:

16    To qualify as predecisional, a document must have been "prepared to assist an agency

17   decision-maker in arriving at a future particular decision[.]" *Lahr*, 569 F.3d at 981 (citing

18

19       [3] Plaintiff did not raise a specific challenge to the deliberative requirement or address the issue of
20   foreseeable harm in its motion, but denies a showing of either in its opposition and reply brief. *See* Dkt.
     28. Plaintiff also, in its reply, withdraws an alternative argument asking for disclosure based on its need
     for information and accurate fact-finding, *see* Dkt. 20 at 17-20, conceding the unavailability of that
21   request in this action. Dkt. 28 at 8, n.2. *See also FTC v. Grolier Inc.*, 462 U.S. 19, 28 (1983) (holding
     attorney work product was exempt from disclosure under FOIA without regard to requester's purported
22   need); *Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 841 F. Supp. 2d 142, 162 (D.D.C. 2012)
     (explaining that, in FOIA cases, the deliberative process privilege may not be overcome by a showing of
23   need). The undersigned further clarifies that the recommendations contained herein do not consider or
     address any discovery or other matters potentially at issue in the separate civil litigation pending in this
24   Court.

*Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1094 (9th Cir. 1997)).  Such

documents may include "recommendations, draft documents, proposals, suggestions, and other

subjective documents which reflect the personal opinions of the writer rather than the policy of

the agency." *Id*. at 979 (quoting *Assembly of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 920

(9th Cir. 1992)).

"A document is not final solely because nothing else follows it."  *Sierra Club*, 141 S. Ct.

at 786 (adding:  "Sometimes a proposal dies on the vine.") (citations omitted).  "What matters . .

. is not whether a document is last in line, but whether it communicates a policy on which the

agency has settled." *Id*.  A court considers whether a document is treated as an agency's final

view on a matter, giving the document "'real operative effect.'"  *Id*. at 786-88 (quoting *Sears*,

421 U.S. at 150, 160).

The fact a document was created as a part of a "'continuing process of agency self-

examination'" does not suffice to qualify it as predecisional.  *Lahr*, 569 F.3d at 981 (citing

*Maricopa Audubon Soc'y*, 108 F.3d at 1094).  Nor does the privilege apply where an agency

identifies only speculative or generalized purposes for use of the information.  *Id*. (citing

*Assembly of Cal.*, 968 F.2d at 921 (possible future use of adjusted census data in calculating

population estimates between censuses did not render data predecisional)).  Also, while the

privilege may extend to documents prepared after a decision, and confirming or rejecting earlier

conclusions, it does not protect later documents "designed to explain a decision already made[,]"

which would not affect the quality of a decision or serve the purpose of the privilege.  *Id*. at 981-

82 (citing *Sears*, 421 U.S. at 152).

Plaintiff argues the Case Study Report is not predecisional because it was created for

ongoing agency self-reflection, auditing, and improvement – in light of the failed SAR – rather

1    than to assist an agency decision-maker in arriving at a particular future legal or policy decision.

2    That is, by its own terms, the Case Study Report served to:  examine the events during the SAR;

3    examine and evaluate USCG's performance during the SAR; provide a learning tool for present

4    and future USCG officials; and aid in the continuous improvement of the SAR system.  *See* Dkt.

5    21, Ex. 1 at 1 ("[Case studies] are intended to be used primarily as a means of contributing to the

6    continuous improvement of the SAR system.  SAR case studies are also valuable teaching tools

7    and benefit current and future command center watchstanders."; "The Case Study Team

8    examined the details of [both the recovery of two individuals from the water and the earlier

9    potentially capsized vessel] to determine actions taken and derive lessons learned for the

10   purposes of continuous process improvement and make a determination if they correlated.")

11   Plaintiff depicts the report as created to examine and review the agency's past actions and

12   decisions.  *See, e.g.*, *Hermosillo v. Cty. of San Bernardino*, C15-0033, 2016 WL 10566649, at

13   *3-4 (C.D. Cal. Oct. 11, 2016) (finding "Interoffice Memo" regarding officer-involved shooting,

14   and created to provide background information, determine what happened, and evaluate the

15   conduct of deputies involved, not shielded from discovery by the deliberate process privilege).

16        Plaintiff rejects the suggestion of a planned final action memorandum – for a SAR now

17   two years in the past – as too vague a possibility to justify the redactions.  Plaintiff further asserts

18   that Defendant has failed to identify any future policy or governmental decision either the Case

19   Study Report or any forthcoming final memorandum is going to help USCG to make.  Plaintiff

20   notes that official USCG policy confirms the creation of case studies for the general purpose of

21   fostering continuous improvement to the SAR system and even requires their routine creation

22   after certain triggering events.  *See* Dkt. 21, Ex. 7 (excerpt of CGAAD, including provisions of

23   COMDTINST M16130.2F § 3.9.4).  Plaintiff argues this "routine collection of data and

24

1  analysis" and only "speculative and generalized purpose" offered by Defendant does not allow

2  for consideration of the Case Study Report as predecisional. *Lahr*, 569 F.3d at 981.

3     Plaintiff also argues the deliberative process privilege applies only to documents created

4  to aid in the formulation of "important public policy." *Hermosillo*, 2016 WL 10566649, at *4

5  (stating in non-FOIA case addressing discovery dispute: "This privilege should be invoked 'only

6  in the context of communications designed to directly contribute to the formulation of important

7  public policy.'") (quoted and cited cases omitted); *see also* Dkt. 20 at 14 (citing other district

8  court decisions). Plaintiff distinguishes the routine operating decisions at issue here from

9  privileged documents informing important policy matters. *See, e.g., E.B. v. New York City Bd. of*

10 *Educ.*, 233 F.R.D. 289, 291-95 (E.D.N.Y. 2005) (finding in non-FOIA case, even where they

11 included advisory opinions and recommendations for higher-ups to consider, documents

12 withheld from discovery related to "routine operating decisions, rather than important public

13 policy" to which the deliberative privilege applies). *See also Morales v. Woodford*, C06-219,

14 2006 WL 8434981, at *1-2 (N.D. Cal. May 2, 2006) (stating in non-FOIA case: "Deliberations

15 regarding the development of the lethal-injection protocol . . . relate to the routine

16 implementation by corrections officials of the State's policy choice of lethal injection as its

17 primary method of execution, not the formulation of that policy at the higher levels of

18 government."), *order clarified on other grounds*, 2006 WL 1646106 (N.D. Cal. June 9, 2006).

19 Plaintiff asserts that Defendant has failed to identify *any* applicable policy. Plaintiff further

20 asserts the redaction of conversations *during* the SAR entail routine operating decisions,

21 including whether and how to engage in this particular SAR, not the formulation of high-level,

22 important public policy.

23

24

1    Defendant counters the arguments raised by Plaintiff and argues the withheld information

2    satisfies the predecisional requirement under Exemption 5.  The Court, for the reasons set forth

3    below, agrees with Defendant.

4    Plaintiff first fails to sufficiently address all of the information withheld from the Case

5    Study Report.  Plaintiff, for example, focuses primarily on the withholding of "opinions and

6    recommendations" of lower level officers, the release of which Defendant asserts would have a

7    chilling effect on the solicitation of staff input when evaluating options prior to reaching a final

8    decision and inhibit frank and honest discussions without fear of later disclosure.  *See* Dkt. 27,

9    Ex. 2.  As set forth in the *Vaughn* index, the withheld information also includes, *inter alia*, a

10    hypothetical scenario and simulation, not conducted during the SAR, and used as input for

11    recommendations to the Chief of CG-SAR; an "after-the-fact evaluation" of documentation

12    presented as input for improvement purposes; and portions of an analysis of the SAR considering

13    the decisions made and rationale "in order to facilitate recommendations" to the Chief.  *Id*.  Such

14    information constitutes the very type of recommendations, thought processes, and opinions well

15    understood to constitute predecisional and deliberative material.

16    Plaintiff also fails to undermine the evidence showing the Case Study Report is

17    predecisional to a Final Action Report that will contain final agency action and conclusions.

18    Defendant asserts its intent "to process under FOIA the Final Action Report for potential release

19    to Plaintiff, following its completion."  Dkt. 27, ¶ 17.  In that final report, the Chief of CG-SAR

20    may reject, accept, implement, or take other action upon review of the Case Study Report.  *Id.*,

21    ¶¶ 13-16; COMDTINST M16130.2F § 3.9.4.8 (a) ("The author(s) of the Case Study shall

22    forward the study, via their chain of command, to the command entity which has authority to

23    implement any recommended changes in policy indicated in the study.").  As anticipated in the

24

CGAAD, a subsequent "**Final Action Report shall be prepared by that command following a review of the Case Study**[,] . . . extracting any needed data from the study to justify the acceptance, implementation, or rejection of the recommendations." COMDTINST M16130.2F § 3.9.4.8 (b) (emphasis in original).

It is not enough to point to the fact a Final Action Report has not issued. The absence of a later report or decision may be relevant "as evidence of whether a later decision was indeed under consideration." *Lahr*, 569 F.3d at 981. "Otherwise, the privilege would be boundless, as '[a]ny memorandum always will be "predecisional" if referenced to a decision that possibly may be made at some undisclosed time in the future.'" *Id.* (quoting *Assembly of Cal.*, 968 F.2d at 921). However, the fact a subsequent report has not, nor ever issues is "not dispositive of whether the records are 'predecisional.'" *Id.* at 981, 983-84 (documents were predecisional despite the fact no subsequent report issued where they were "clearly prepared for the specific purpose of aiding the agency in its determination", contained an evaluation of data, calculations, and thought processes, and reflected an "ongoing process of refining the agency's ultimate conclusions" about what witnesses to an event saw). *See also Maricopa Audubon Soc'y*, 108 F.3d at 1094 (despite the absence of a specific subsequent decision, documents "prepared for the purpose of advising" were "'predecisional' because [an agency official] relied on them in deciding what action, if any, he was obligated to take in response to the particular allegations.")

The appropriate question is whether the report reflects Defendant's final view on the matter. *See Sierra Club*, 141 S. Ct. at 786-78 (finding draft biological opinions that proved to be an agencies' last word on a subject protected by Exemption 5 because they reflected a preliminary view, not a final decision, about that subject). In this case, the evidence presented, including both the *Vaughn* Index and the Case Study Report itself, refute a depiction of the

document as communicating Defendant's final, settled position. *See, e.g.*, Dkt. 21, Ex. 1 at 44-59 (omitting information under "Opinion" and "Recommendation" headings).

Nor does Plaintiff demonstrate the inapplicability of Exemption 5 given a failure to identify an important public policy or any specific policy or recommendation under consideration. The "important public policy" cases cited by Plaintiff are factually and otherwise distinguishable for the reasons set forth by Defendant. *See* Dkt. 26 at 14 & nn.9-10; Dkt. 29 at 6, n.3. It further remains that a failure to identify a specific recommendation or policy under consideration in relation to the Case Study Report does not preclude application of the deliberative process privilege. *See Maricopa Audubon Soc'y*, 108 F.3d at 1094 ("Our inability to identify the actual decision that was made does not alter the fact that the withheld materials were 'prepared in order to assist an agency decisionmaker in arriving at his decision.'") (quoted source omitted). Instead, and as recently recognized by this Court, "[a] pre-decisional document 'must have been produced during an identifiable decision[-]making process, even if the process did not culminate in a decision.'" *Sea Shepherd Legal*, 516 F. Supp. 3d at 1230 (quoting *Am. Civ. Liberties Union v. Dep't of Def.*, C18-154, 2019 WL 3945845, at *6-7 (D. Montana 2019) (finding prior Ninth Circuit statements regarding an agency's identification of a specific decision "more fairly read to mean agencies must show their intent to make a specific decision[,]'" and that the decisions in *Assembly*, *Lahr*, and *Maricopa* together "provide a predecisional document must be the product of a distinct decisionmaking process, as opposed to a routine or ongoing procedure, and that the process must contemplate a particular decision will be made, though the decision need not come to fruition.")). *See also Hamilton Sec. Grp. Inc. v. Dep't of Hous. & Urb. Dev.*, 106 F. Supp. 2d 23, 30-32 (D.D.C. 2000) (rejecting argument a document was not predecisional because it was not related to the adoption of an identifiable government policy and

1    finding its protection under Exemption 5 "not foreclosed, as long as the document was generated

2    as part of a definable decision-making process."), *aff'd*, No. 00-5331, 2001 WL 238162 (D.C.

3    Cir. Feb. 23, 2001).

4        Defendant denies the withheld information relates solely to a routine and continuing

5    process of self-examination, and provides a *Vaughn* Index with detailed explanations for

6    withheld portions of the report.  Defendant explains the established agency process for the

7    development of SAR process and policy as beginning with a Case Study Report, in which

8    subordinate officers offer their candid opinions, assessments and recommendations for

9    consideration, and culminating in a Final Action Report, wherein superior officers may, if

10   warranted, take further action.  *See* Dkt. 27, ¶¶ 3-16 and Ex. 2; COMDTINST M16130.2F §§

11   3.9.4-3.9.4.10.

12       Defendant also identifies numerous potential policy implications for the deliberative

13   recommendations and opinions in the Case Study Report.  *See, e.g.*, Dkt. 27, ¶¶ 14-15

14   (describing potential policy implications as including implementation of changes to doctrines

15   applicable to internal air operations, boat forces, or local command centers, to best practice

16   guides for different units involved in SAR operations, to the CGAAD, and to particular training

17   practices).  Defendant asserts it withheld recommendations and opinions created specifically for

18   the Chief of CG-SAR "which may lead to such potential agency decisions or deliberations made

19   in real time that cannot be further separated from the facts." *Id.*, ¶ 16.  It argues revealing the

20   specific recommendations under consideration would negate the privilege by revealing what was

21   being deliberated within USCG.  The evidence, considered as a whole, supports the conclusion

22   the withheld information is predecisional and without "real operative effect independent of

23   review." *Hamilton Sec. Grp. Inc.*, 106 F. Supp. 2d at 32 (finding the development of a draft

24

1    audit report of the agency's loan sales program served to "evaluate the program so that the OIG

2    could recommend appropriate measures to approve it.") (cited source omitted).  *See also Sigler v.*

3    *U.S. Dep't of Health & Hum. Servs.*, C18-6830, 2019 WL 4749896, at *3 (C.D. Cal. Sept. 30,

4    2019) ("An agency's declarations are given substantial weight regarding the application of a

5    FOIA exemption and are not required to specify . . . objections [to disclosure] in such detail as

6    to compromise the secrecy of the information.") (internal quotation marks and quoted source

7    omitted).

8    　　　　That the Case Study Report also serves routine purposes, such as aiding the continuous

9    improvement of the SAR system, includes factual information, and addresses past discussions,

10   actions, and decisions, does not alter the fact that select predecisional material may be properly

11   withheld from disclosure.  *See* Dkt. 27, ¶ 8, 10  (attesting USCG did not withhold purely factual

12   information, withheld only facts inextricably intertwined with deliberative material, and released

13   all information segregable from exempt information, and that the report contains policy opinions

14   and recommendations to the chain of command based on the events of May 2, 2019 and as yet

15   unapproved evaluations of events and hypothetical actions).  Courts have, as Defendant

16   observes, repeatedly found information predecisional and deliberative where it entails

17   preliminary opinions and recommendations, rather than final agency policy, and provides for the

18   protection of candid interactions between subordinates and superiors.  *See, e.g.*, *Maricopa*

19   *Audubon Soc'y*, 108 F.3d at 1094 (Exemption 5 applicable to materials related to alleged

20   employee misconduct and potential responses by the agency); *Nat'l Wildlife Fed'n*, 861 F.2d at

21   1121 (pages withheld from draft forest plans represented "tentative opinions and

22   recommendations of employees on matters instrumental to the formulation of policies";

23   "Recommendations on how best to deal with a particular issue are themselves the *essence* of the

24

1    deliberative process. So long as such recommendations do not represent final agency policy, it is

2    clear that they fall within the deliberative process privilege.") (emphasis retained); *Nat'l Parks*

3    *Conservation Ass'n v. U.S. Dep't of the Navy*, No. C19-645-TSZ, 2020 WL 6820821, at *10-11

4    (W.D. Wash. Nov. 20, 2020) (Exemption 5 applicable to pre-decisional drafts reflecting staff

5    members' evaluation of information and opinions on an impact statement revised several times

6    before disclosure to the public; distinguishing purely factual information from deliberative

7    materials including comparisons of factual information, summaries of historical information

8    "because the process of summarization is itself deliberative[,]" and factual recitations in a draft

9    later deleted from a final version "because their omission reveals that the agency decided not to

10    rely on those facts or related analysis after having been invited to do so."), *reconsideration*

11    *denied*, 2021 WL 1192443 (W.D. Wash. Mar. 30, 2021); *Shapiro v. Cent. Intel. Agency*, 272 F.

12    Supp. 3d 115, 118 (D.D.C. 2017) (draft operations plan for funeral delegation not merely a

13    logistical document where it was distributed between agencies, "a pre-decisional draft that was

14    'recommendatory in nature' and could not have become final without additional inputs", and

15    "part of the 'give-and-take of the consultative process'" between agencies for such preparations;

16    finding choice as to what factual material to include or remove a part of the deliberative process

17    and properly exempt) (quoted and cited sources omitted).  For this reason and for the reasons

18    stated above, Defendant meets its burden to show the information withheld from the Case Study

19    Report satisfies the Exemption 5 predecisional requirement.

20        2.   Deliberative requirement:

21        "Material is deliberative if it 'bear[s] on the formulation or exercise of agency policy-

22    oriented *judgment*.'"  *Sea Shepherd Legal*, 2021 WL 351362, at *8 (quoting *Petroleum Info.*

23    *Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1435 (D.C. Cir. 1992)) (emphasis in original)).

24

On the other hand, "when the material 'could not reasonably be said to reveal an agency's or official's mode of formulating or exercising policy-implicating judgment, the deliberative process privilege is inapplicable.'" *Id*. Examples of deliberative materials include "'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency or that inaccurately reflect or prematurely disclose the views of the agency.'" *Id*. (quoted source omitted).

Where a document contains both factual and deliberative material, courts employ a "'functional approach,'" considering whether information reveals the mental processes of decisionmakers and would expose an agency's decision-making process in a manner that would discourage candid discussion. *Id*. "Pre-decisional materials, even if 'factual' in form, may warrant exemption if disclosure would reveal the agency's 'evaluation and analysis of the multitudinous facts'; 'the disclosure of the manner of selecting or presenting facts would expose the deliberative process'; or 'the facts are "inextricably intertwined" with "policy-making processes."'" *Id*. (quoting *Nat'l Wildlife Fed'n*, 861 F.2d at 1118-19). "Exemption is particularly apt when the material reflects the opinions of individual staff rather than the agency as a whole." *Id*. (quoted source omitted).

Defendant asserts the Case Study Report includes recommendations and opinions of individual USCG officers to be transmitted via the chain of command to the Chief of CG-SAR, who has the authority to implement potential changes in policy and who issues a Final Action Report. Dkt. 27, ¶ 13-15 and Ex. 2; *see also* COMDNST M16130.2F § 3.9.4.8. It describes the "Case Study Report to Final Action Report" as an established USCG administrative process by which national SAR process and policy is developed and maintains the withheld information is

1    part of that process.  Dkt. 27, ¶¶10-12 and COMDINST M16130.2F § 3.9.4.8(d) ("[A] Case

2    Study is considered a deliberative, pre-decisional document because it has summarized facts and

3    individual opinions which may not have been approved by the chain of command.")  Defendant

4    notes the information withheld in this Case Study Report included "discussions or debate about

5    possible course of action which antedate decisions made in the search and rescue[]" and that the

6    "deliberative discussions were made in real time to assist decision makers in an ongoing

7    emergency situation."  Dkt. 27, ¶ 11.  Other withheld material was "created explicitly as a

8    recommendation and opinion to the Chief of CG-SAR for potential changes of Coast Guard

9    policy or doctrine."  *Id*., ¶ 12.  Defendant asks that the Court hold USCG may protect such

10   information and preserve the candor it depends on for SAR operations.

11          Plaintiff's challenge to the deliberative requirement addresses only the omission of

12   conversations during the SAR.  Plaintiff contends such conversations do not bear on the

13   formulation or exercise of an agency-policy oriented judgment, and asserts a failure to

14   demonstrate they contain material so candid or personal in nature that disclosure would prevent

15   USCG officials from effectively conducting future SARs.

16          In making its determination, the Court must "focus on whether the document in question

17   is a part of the deliberative process."  *Nat'l Wildlife Fed'n*, 861 F.2d at 1118.  Even where factual

18   content is included, "if disclosure of the document would expose 'the decision-making process

19   itself' to public scrutiny by revealing the agency's 'evaluation and analysis of the multitudinous

20   facts,' the document would nonetheless be exempt from disclosure."  *Id*.  *See also id*. at 1121-22

21   (documents containing "tentative opinions and recommendations" of individual staff on "matters

22   instrumental to the formulation of policies" revealed the "mental processes" that went into

23

24

1 choosing a final course of action, and were deliberative in revealing "editorial and policy

2 judgment" of the agency).

3   Defendant, in the *Vaughn* Index, describes the need for subordinate officers "to be frank

4 and honest with those making potentially life and death decisions based on the information

5 available at the time without fear of their discussions being disclosed later." Dkt. 27-2. *See also*

6 *Touarsi v. United States Dep't of Just.*, 78 F. Supp. 3d 332, 346 (D.D.C. 2015) (finding a CBP

7 officer's notes concerning the processing of a traveler at the border protected under the

8 deliberative process privilege and noting: "The deliberative process privilege . . . 'protect[s]

9 materials that concern individualized decisionmaking' as well as 'the development of generally

10 applicable policy' and thus protects routine decisionmaking.") (quoting *Hinckley v. United*

11 *States*, 140 F.3d 277, 284 (D.C. Cir. 1998) (finding deliberative process privilege protected

12 internal deliberations concerning whether a patient would pose a danger to himself or others if

13 conditionally released given the importance of candor to such deliberations)). The omitted

14 discussions were, moreover, selected as potentially relevant and included in the Case Study

15 Report for consideration by USCG decisionmakers in a Final Action Report and for development

16 of national SAR process and policy. "[T]he selection of . . . facts thought to be relevant clearly

17 involves 'the formulation or exercise of ... policy-oriented *judgment*' or 'the process by which

18 *policy* is formulated,' in the sense that it requires 'exercises of discretion and judgment calls.'"

19 *Mapother v. Dep't of Just.*, 3 F.3d 1533, 1538-39 (D.C. Cir. 1993) (finding report and its factual

20 components properly withheld under deliberative process privilege) (quoting *Petroleum Info.*

21 *Corp.*, 976 F.2d at 1435, 1438) (emphasis in original). The evidence presented suffices to show

22 the deliberative nature of the material at issue. Indeed, and as Defendant observes, "a document

23 containing recommendations prepared for decision and review by senior leadership is 'a classic

24

example of a deliberative document[.]'" *Center for Biological Diversity v. U.S. Fish & Wildlife Serv.*, C18-0342, 2021 WL 1209221, at *13 (D.D.C. Mar. 31, 2021) (citing *Abtew v. DHS*, 808 F.3d 895, 899 (D.C. Cir. 2015)).  The information withheld from the Case Study Report, in sum, satisfies the Exemption 5 deliberative requirement.

D.    Foreseeable Harm

The 2016 FOIA Improvement Act added a "foreseeable harm" requirement to the statute. The amendment allows withholding of information only if "the agency reasonably foresees that disclosure would harm an interest protected by an exemption" or the "disclosure is prohibited by law[.]"  5 U.S.C. § 552(a)(8)(A)(i).  "In other words, even if an exemption applies, an agency still must release the record if the disclosure would not reasonably harm an exemption-protected interest and is not prohibited by law." *Sea Shepherd Legal*, 516 F. Supp. 3d at 1239.  A showing of foreseeable harm serves as "'an independent and meaningful burden on agencies.'" *Id.* (quoting *Nat. Res. Def. Council v. U.S. Envtl. Prot. Agency*, No. 17-CV-5928, 2019 WL 3338266, at *1 (S.D.N.Y. July 25, 2019)).

The few courts to have addressed the foreseeable harm requirement appear to agree an agency must do more than rely on general assertions of harm and should explain how disclosure of withheld information would harm internal agency discussions, deliberations, and/or decision-making processes.  *Id.* (citing, *inter alia*, *S. Environ. Law Ctr v. Council on Environ. Quality*, 507 F. Supp. 3d 694, 700 (W.D. Va. Dec. 14, 2020) (stating agency should provide "'[c]ontext or insight into the specific decision-making processes or deliberations at issue, and how they in particular would be harmed by disclosure.'")).  For example, one court found an agency met the foreseeable harm requirement by focusing on "'the information at issue'" and concluding "disclosure of that information 'would' chill future internal discussions." *Machado Amadis v.*

1 | *U.S. Department of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (agency's affidavit "adequately

2 | explained that full disclosure . . . would discourage [staff] from 'candidly discuss[ing] their

3 | ideas, strategies, and recommendations,' thus impairing 'the forthright internal discussions

4 | necessary for efficient and proper adjudication of administrative appeals.'") (quoted source

5 | omitted).  Similarly, this Court found an agency satisfied the requirement by delving into omitted

6 | information and explaining how it would impact future internal discussions by, for example,

7 | "'discourag[ing] a frank and open dialogue among agency employees during the formulation of

8 | briefing materials for agency leadership[.]'"  *Sea Shepherd Legal*, 516 F. Supp. 3d at 1240.  A

9 | court has, on the other hand, found insufficient an agency's general representation that release

10 | would "jeopardize the free exchange of information[]" where broadly applied to withheld

11 | discussions across a variety of different categories, without category-specific detail.  *Rosenberg*

12 | *v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 77-79 (D.D.C. 2018).[4]  Another court found an

13 | inadequate showing where an agency merely posited release "'*could* chill speech' and could

14 | have an effect on interagency discussion", instead of showing a chilling of speech was

15 | reasonably foreseeable and identifying "the link between this harm and the specific information

16 | contained in the material."  *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 375 F. Supp. 3d 93, 100-01

17 | (D.D.C. 2019) (emphasis in original).

18 |         Defendant here explains by declaration:

19 |              To release the deliberations and thought processes of the responding
members seeking to provide critical insight to their superiors in order to respond

20 |         to the emergency situation would have a chilling effect on the openness of future
recommendations.  If the opinions and recommendations of [the] Case Study

21 |

22 |         [4] The court in *Rosenberg* also clarified that, while the foreseeable harm requirement does not go
so far as to require the identification of harm likely to result from each Exemption 5 withholding at issue,

23 | the government needed to do more than "perfunctorily state that disclosure of all the withheld information
– regardless of category or substance – would jeopardize the free exchange of information."  *Rosenberg*,

24 | 342 F. Supp. 3d at 79.

> Report were to be released via the FOIA process, it would prevent the flow of open communication and informed decision making. The Coast Guard relies on the analysis of the Case Study Reports not only to make specific changes to policies and doctrines, but to also continuously improve the [SAR] procedures for future emergencies. Releasing the limited withheld deliberative information would limit the openness of the opinions presented for fear of litigation.

Dkt. 27, ¶ 19. Defendant also addresses the foreseeable harm associated with each withholding in the *Vaughn* Index. *Id.*, Ex. 2. For example, with respect to a summary of a discussion between a duty officer and mission coordinator regarding the type of search to run, and including "a weighing of the evidence and a 'back and forth'" with regard to possible future search parameters based on analysis of circumstances, the index explains disclosure would have a chilling effect on the ability to solicit staff input when evaluating options prior to reaching a final decision, and asserts the need for subordinate commanders "to be frank and honest with those making potentially life and death decisions based on the information available at the time without fear of their discussions being disclosed later." *Id.* Other examples of foreseeable harm include a chilling effect on Defendant's ability to use hypothetical scenarios to improve future SARs and, with respect to an after-the-fact evaluation of documentation in a database system, a restriction in "performing analysis of its internal systems for improvement purposes." *Id.*

Plaintiff contends Defendant's foreseeable harm showing, like the showing in *Jud. Watch, Inc.*, 375 F. Supp. 3d 93, is merely speculative and insufficient to meet the standard. Plaintiff specifically asserts Defendant "has done nothing to explain why Coast Guard officials would fail to apply established Coast Guard protocols to rescue people in distress if their discussions were later disclosed." Dkt. 28 at 12. Plaintiff also asserts Defendant's failure to show disclosure of those discussions would harm an interest protected by the exemption because, rather than debating policy or making policy-oriented judgments or legal decisions, Coast Guard

1   officials performing a SAR are conducting a task they are trained to perform and which is

2   circumscribed by existing policy. *Id*. With regard to the remaining withheld material, Plaintiff

3   contends Defendant insufficiently asserts release "'would prevent the flow of open

4   communication and informed decision making.'" *Id*. (quoting Dkt. 27, ¶ 19).

5       Plaintiff's contentions miss the mark. Defendant does not contend disclosure of

6   conversations during the SAR would result in Coast Guard officials failing to apply established

7   protocols to rescue people in distress or deny the essential nature of such conversations and

8   related tasks. Defendant asserts a chilling effect on frank and honest communications during

9   those conversations and explains the impact of that effect in light of both the life and death

10  decisions and the important process and policy decisions at issue. Nor does Defendant, with

11  respect to any of the withheld material, broadly rely on a generalized assertion of harm or merely

12  speculate as to the possibility disclosure *could* result in harm. Defendant links the harm asserted

13  to the specific portions of the Case Study Report withheld and, with respect to each withholding,

14  asserts disclosure *would* result in the harm identified. *See* Dkt. 27, Ex. 2. Defendant, in so

15  doing, satisfies the foreseeable harm requirement.

16                                  CONCLUSION

17      For the reasons explained above, the Court finds Defendant meets its burden to show it

18  appropriately redacted and withheld information from the USCG Case Study Report pursuant to

19  the Exemption 5 deliberative process privilege. Accordingly, the Court recommends Plaintiff's

20  motion, Dkt. 20, be DENIED and Defendant's motion, Dkt. 26, be GRANTED.

21                                  OBJECTIONS

22      Objections to this Report and Recommendation, if any, should be filed with the Clerk and

23  served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and

24

Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **September 24, 2021**.

Dated this 9th day of September, 2021.

S. KATE VAUGHAN
United States Magistrate Judge

REPORT AND RECOMMENDATION - 25